Good morning again, Your Honors. My name is Patrick E. Brown, and I represent Plaintiff Appellant Zach Hillesheim in this appeal. Mr. Hillesheim has raised several issues in this appeal, one of which is substantially similar to the issues in 1731-43, which we just finished oral argument on, and that is the issue regarding remand. Mr. Hillesheim's state law claim, of Mr. Hillesheim's state law claim, the only thing that Mr. Hillesheim wishes to add regarding remand is that Holiday's Cross Appeal regarding the issue of pre-suit notice is further proof that Mr. Hillesheim's MHRA claim should have been remanded to the state court because it is evidence that there was a novel issue of state law which was before the district court. So turning to the issues that are novel to this particular appeal for Mr. Hillesheim, Mr. Hillesheim acknowledges that he faces a high hurdle when it comes to the standard of review with respect to the question of whether or not the district court erred in failing to exclude the Bear G affidavit. However, Mr. Hillesheim believes that he meets this high hurdle because the district court based the determination that exclusion was not necessary on an erroneous view of the law. Specifically, although Federal Rule of Civil Procedure 37 places the burden on, in this instance, Holiday to show his failure to disclose was substantially justified or harmless, the district court shifted the burden to Mr. Hillesheim to show he was harmed by the failure to disclose. So fundamentally what this case comes down to, and the potential practical ramifications from this, is how much are parties going to disclose prior to summary judgment? If we were to take Holiday's position to the logical conclusion, litigants can put forth any number of affirmative defenses, pick the one that they think they're most likely to rely on, disclose that and the information with respect to that. And ignore any of their obligations with respect to any of the other affirmative defenses until it's time for summary judgment. At which point, they can just say, well, because if the court wanted to and if the court is willing, we can reopen discovery and look into those facts which we should have disclosed. And essentially start the clock over instead of moving forward with summary judgment. Now, I tend to agree that you have a good argument under the rule that the language of the rule uses the word may use these defenses. It doesn't require that they actually be the favored defense or something of that nature. But then you get to the exceptions, which is harmlessness and I forget the other one, without justification. Substantial justification. Substantial justification. When you get to harmlessness, I'm not sure you have any harm here for two reasons. One was the ability to take a deposition of this particular witness, which I think helps there. But then also, what really caused this claim to go away was the mootness itself and not what the experts said. In other words, it wasn't a failure to disclose the expert. It was the fact that they had actually changed and made the parking lot comply with the ADA. What's your response to that? So, as an initial matter, when I reached out to Holiday's counsel regarding my concern with respect to the Bererji affidavit. Opposing counsel only said that she would consider allowing my client to take a deposition. Not that she would make him available and that we would get it done in an appropriate amount of time for my client to be able to respond. And because my client is not the person who failed to do the disclosure, it is harmful for him if he has to bring substantially more motions to open discovery again or to stay the briefing schedule. That should be on the person that failed to disclose, if they're going to attempt to make that disclosure harmless. The non-disclosing party should be the one doing the work to get to that point, not the person that was harmed by that. And then, with respect to whether or not it's moot, it's not clear from the affidavit whether or not it actually is moot, and that is another reason why it was harmful. My client relied on their disclosure only of an injury in fact affirmative defense. And because we're in a fee shifting environment, and because the rules of discovery dictate that my client try to narrowly tailor his discovery requests and the burden he places on the other party to the issues in dispute. My client didn't ask for a site inspection, because- Suppose though that Holiday decides to fix it after discovery's closed. I know that that's not this case, but they decide to fix it after discovery's closed. And you say, well, then they come in with an expert that says, well, we fixed it, it now complies with everything. You got an affidavit, you've got pictures, you've got diagrams, name the proof, you've got it. And you say, well, you didn't disclose that. Would the argument be that they can't come in and argue that the case is moot because they didn't disclose it? At some point, that would have to be the case. But right now, we're just talking about at the summary judgment stage. I know of at least one state, Minnesota state case where on, essentially on the eve of trial, a defendant attempted to bring in that evidence, literally showed up to court with a declaration, and it was found to be too late. Because at some point, it does need to be too late. Because both sides need to be able to present, there needs to be adversary presentation, and both sides need to be able to have the opportunity to collect those facts. So, for example, my client needs the opportunity, he needs to be aware that they're making changes, and he needs to have at least the opportunity to take a site inspection after he becomes aware. And to challenge the person that's taking the measurements, take their deposition to figure out, does Mr. Geragy know what he's talking about when he says that it's level? Does Mr. Geragy know how to take measurements appropriately when we're in this context? And my client wasn't able to collect that evidence because it appeared on the face of what was provided that Holiday had given up on that affirmative defense. And so, my client was put in a situation where he could either send out discovery and be told essentially that it's outside the scope because they're not providing it, or they're not using it anymore, or he waits as he did based on the representations. He doesn't incur the additional costs on himself, and he doesn't place those burdens on the defendant. Or he gets in a situation like this where, because the defendant apparently doesn't have to disclose this information, as long as they attach it to their summary judgment motion, he's put at a substantial disadvantage. And as Mr. Hillsheim indicates in the brief, what is a lay person may consider to be level versus what is required by the statute are two different things. And we don't have measurements from Mr. Beragy with respect to what he means by level. His affidavit doesn't say, I took measurements of the access aisle, and I took measurements of the parking spaces, and they are all less steep than 1 to 48 or 1.19 degrees. Is your argument in this case somewhat in tension with your argument in the last case? And I don't mean to bleed the cases together, but you're saying that Hillsheim could look at it and say, oh, this complies with the ADA or doesn't apply with the ADA. But the vice president of engineering can't do that. Well, again, we're not saying that. We're talking about what is sufficient at the summary judgment stage. So Mr. Hillsheim only has to create a genuine issue of material fact in the previous case, and there's our position that his affidavit did such. In contrast, in this case, Holiday is moving for summary judgment. And when it comes to the issues of mootness, that is their burden. And one of the very specific things that was alleged in the complaint was that they weren't compliant with the sloping requirements under 502.4 of the 2010 standards, which says that the access aisle and the parking spaces need to be on the same level, and they cannot have slopes greater than 1 to 48. And even though they were on actual notice that my client was concerned about these issues, they failed to provide any measurements with respect to that aspect. So although they may be able to, again, if this was to go back down and we were to go to trial, they may be able to later bring in those measurements. At this stage in the litigation, they haven't met their burden. It's not to say that they won't or they can't ever. It's to say that they haven't yet. And that my client should be entitled to, again, the denial of the summary judgment at this stage, so that he, and potentially reopening of discovery, so that he can collect the evidence that he needs to adequately defend against that potential affirmative defense. I'll reserve the remainder of my time for a vote. May it please the court, I am still Tamara Novotny, and I'm still representing Holiday Station stores in what's going to sound like a very similar case to some extent. What is it that you failed to do that you should have done, and that is your client? Well, apparently I was supposed to- In all seriousness, can't we cut to the real heart of these cases, instead of talking about a lot of things? It's impossible to get to the heart of the case. Maybe there is no heart of the case. Well, I assume you're talking with respect to the affidavit. The allegation is that we did not disclose the affidavit of Mr. Bereji earlier in the litigation. And the court assumed, but did not actually go so far as to decide whether our disclosure violated Rule 26. Holiday's position is, and my position is, I believe that we were in compliance with the rules as they were amended. And they're discussed after the 2000 amendment. The comments to the rule basically talk about the fact that you're not required to disclose a witness or documents that you do not intend to use. Regardless of the allegations and the pleadings. But you're obligated- Precisely. It just says, and may use to support its claims or defenses. So it seems to be broader, or actually narrower the way you phrase it, than just anything you don't plan to use, you don't have to disclose. Well, as I read the comments, it really is narrowing. I mean, it does certainly obligate you to timely disclose if you determine that you're going to pursue or use a certain witness or documents. And I believe even Hillshine's attorney in their brief acknowledged that if Holiday contemplated pursuing the mootness defense, then it was required to affirmatively disclose. So I guess the issue is, when did we decide we were going to pursue the mootness defense? And we've submitted to the district court below affidavits, etc. Where yes, we had asserted the mootness defense among many affirmative defenses in our answer. But we were particularly focused on the Minnesota Human Rights Act statute that had just been enacted. And in particular, focused on the notice provision that I'll talk about shortly. We were, this case was sued out, I believe, the day after that statute went into effect. And we saw this as an opportunity to certainly litigate that notice argument. And it was as we were really delving into that statute and realized that the affirmative defense provision that Judge Strass mentioned in the prior appeal, realized that that's really independent and separate from the notice requirement. Gee, there's an opportunity here to raise that issue and seek dismissal of the MHRA claim. And it was in developing the motion itself that we determined that we would pursue that route. But even if we assume that we had an obligation to disclose the affidavit or to disclose Mr. Breezy earlier, as council acknowledges, it is a very broad, substantial deference standard that's given to the district court to make determinations about evidentiary rulings. Including whether to consider affidavits submitted in relation to summary judgment motions. And it's also a very broad discretion given to the district court to decide what, if any, sanctions or any other remedy is appropriate. And the cases have explained that the remedy that Mr. Hillsheim was asking, which was complete exclusion of Mr. Breezy's affidavit in any of the exhibits attached, is considered a very harsh remedy, it's one to be used very sparingly. Quick question, a factual question. Sure. Rule 26 seems to apply to things that are in the disclosing party's possession, custody, or control. Was that, and maybe this is beyond the record, you can tell me that, but was that affidavit actually in the custody, possession, or control of Holiday Station stores while discovery was open, which is what the rule seems to apply to? No, the affidavit was prepared as we were preparing the motion for summary judgment. And I believe I submitted an affidavit in response to the motion to strike where I explained that where it started was I was going to pursue that affirmative defense. And Hillsheim had produced in the course of discovery a photograph of what we refer to as a temporary upgrade. That showed the temporary upgrade bringing the story into, I would say, a temporary compliance while they were pending a planned remodel. And looking at that photograph, because it seemed to support the affirmative defense argument, and I put in my affidavit, contact Holiday to say, hey, can you tell me when this temporary upgrade? I didn't know it was a temporary upgrade, but when was this done so I can put that in my motion papers? Learned that this was ultimately a temporary upgrade because there was this remodel that was done. I then put that information into the affidavit that was submitted to the court. So does the rule apply at all, which only requires the disclosure of documents, electronically stored information, and tangible things that are in your possession, custody, or control? Well, there are cases, and I know counsel will point this out if I don't, but I mean, there is an obligation to supplement even after the close of discovery. So, I mean, we couldn't just hold on to that and never produce that information, just spring it on them at trial. So, it's probably a close call, but I think obviously we produced it as soon as we have it or certainly within a timely manner thereafter. But again, given the court's high standard and its deference to make these type of rulings, here the court did decide that the disclosure, if you want to say it's a late disclosure, was harmless. And there were several factors that I think the court took into consideration. First, the photograph that's marked as exhibit A attached to Mr. Bracey's affidavit is the photograph that Mr. Hilsheim had produced in discovery, again showing that temporary upgrade. And the court notes that that photograph reflected in and of itself that the store had been brought into compliance as of the date of that photograph, which appears to have been around August of 2016. There's also the fact, and the record clearly shows, that despite arguments about the inability to respond adequately to Holliday's motion, Hilsheim did submit, I think, a reasoned response to Holliday's motion. They presented arguments, including arguments attacking Mr. Bracey's affidavit and whether it was sufficient and so on. Certainly, at no time did they raise an argument under Rule 56D, which would certainly permit a party to say, hey, I cannot sufficiently respond to this motion without additional discovery or without additional time or an opportunity to get my own affidavits, there was no motion like that. And significantly, the court did take into consideration that when counsel approached me and said, hey, I want you to strike your affidavit, and my response was no, but I can certainly understand if you want to take his deposition, I'll consider that request. Part of it is, I need her to let me know if she really needs to take his deposition. Much of his affidavit is, I think as counsel even acknowledges, it's pretty factual, it's historical, it's verifiable. I think in how she described it, as much of it was not materially probative. So it seemed that in her own view, this affidavit is not one that she really is going to be able to attack very much on cross-examination. It's basically dates when certain things were done. On appeal is the first time that she ever raised an issue regarding a need for site inspection or a need for any other discovery. Those issues were never raised to the court below. And I'll note, there was no request to do a site inspection or to do any kind of discovery, even though it was clear that Mr. Hill, Scheinman, his attorney, were aware of the temporary upgrade as of August 2016, which I believe is a year, at least a year before our motion was brought. And there's ultimately no explanation as to how having that affidavit any earlier, how that would have changed the outcome of anything here. Again, it's very factual information. You have a photograph showing a temporary upgrade. You have a photograph showing a final remodel. Both of them show the parking lot being in compliance. Because the standard really is that the parking space and the access all have to be on the same level. And the allegation, the complaint was that they were quote, not level. And obviously, if you look at the photographs that the court considered, very clearly, they are level after both the temporary upgrade and certainly after the final upgrade. I want to move very quickly to the issue we raised in our cross appeal, which is the MHRA Notice Statute 363A.331 as it was in effect in 2016. Obviously, whenever you're trying to interpret a statute, the goal is to give effect to the legislature's purpose in enacting that statute. Here, the district court recognized not only in our case, as well as in an earlier case, I think what the proper purpose of the statute was, which is to curtail lawsuits that generally are forcing or coercing businesses into paying money to try and settle these cases involving what are usually minor technical accessibility issues. Rather than incurring the cost of litigation. Why do we care what the purpose is if the statutory language is plain? Well, I think in order to have effect, you have to have understanding and appreciation of what the legislature was trying to accomplish. Maybe, but I served on the Minnesota Supreme Court and I can give you legions of cases that say, if the statutory language is plain, we don't go to purpose, which is considered a candidate of construction. So why do we care about any of that? Well, I think because the extent that you want to give effect to the legislation, you want to take into consideration what is its ultimate goal here to accomplish. You can look at the plain language and I think reach the same conclusion. And I think somewhat ironically, I think where it's, the statute could be stated in some ways clear. But I think where it's the notice requirement and the fact that it really is intended to require a business to get notice and an opportunity to cure any of these minor accessibility, technical defects before facing the cost of litigation. Really comes through in the exceptions and we talk about this in our brief. But if you look at exception 5B, what it says is this section, referring to 363A.331. This section does not bar a person from bringing an action if certain conditions are met. And as we talked about in our brief, bringing has been interpreted under the Minnesota Human Rights Act as commencing. So it's saying that the section does not bar a person from commencing an action if certain conditions are met. Now, there'd be no need to have that exception if in all other circumstances, if there wasn't a preclusion on otherwise bringing these actions. It also just does not meet the purpose. I mean, counsel's argument is this- I thought the legislature passed a statute now that made it clear that there was an affirmative defense. The affirmative defense was in both versions. That's always been there. I'm sorry? The affirmative defense provision is in both the 2016 and the 2017 version of the statute. This is really related to the notice requirement, which is within the- I understand. Okay. So when you read the statute, you read the plain language, including that exception, clearly saying that you're not barred if these conditions are met. By default, you must be barred if you don't meet one of those conditions. The plain language of the statute talks about and clearly reflects discouraging litigation. It talks about pre-litigation resolution, both in the notice and in the statute itself. Is there any textual hook that says you have to send such a letter? I read that statute five times, six times, and I got to say it's not the most clear statute. But I didn't see anything that says you have to send such a letter or that there's any consequences for the failure to send such a letter. Am I wrong about that? Well, and that's where I agree with you that it certainly could have been stated with greater clarity. And I think that's when we go back to whether you want to say you need to look at the legislative history or you need to delve into what the purpose is, I think that's where it helps understand. Because it doesn't really clearly say you have to send the notice or here's what the consequence is. However, if you're not required to send the notice, if there's no consequence, what is the point of this statute? What does it accomplish? Well, could it be possible that people were sending out abusive notices, that there was abusive litigation taking place? And the legislature wasn't saying you have to send out these letters, but we're not going to allow you to send out letters that are abusive, that are blackmailing these folks, the business, whatever the case may be. And so if you're going to make the affirmative decision to send out the letter, you need to follow these requirements so that you don't engage in abusive litigation techniques. Well, I certainly agree that the context of when they were passing the statute, there were, we've submitted just a sample of the many, many, many cases that were being sued out, these types of cases. And a lot of the businesses, I'm not going to say that they were abusive letters or anything that was going out, but you get a letter and my client is probably the exception. A lot of these businesses are probably one, two shop operations. And if they're given an opportunity to, hey, you can make this lawsuit go away for a couple thousand dollars. They're going to pay that money as opposed to facing litigation and presenting any defenses or any arguments. And I think that is really what the statute was trying to accomplish. And I think, like I said, the district court, I think, correctly recognized what the purpose is. I think it's ultimately ruling, ultimate ruling does nothing to help give effect to that purpose at all. So unless there's any other questions. Thank you for your argument. Thank you. Thank you, your honor. I would like to address the question regarding when the affidavit came into being. So in the affidavit, there are several dates that are indicated, which would say that Holiday had in their possession and control multiple documents that showed that they were in the process of making upgrades. For example, this has been planned since November of 2015, and that the actual changes were initiated in November of 2016. So although they may not have drafted the affidavit yet, they had those facts. They had documents that supported those facts in their custody and control. And one of the things that appears to be happening here is that Holiday's counsel is confusing when she learns about particular information with when her client knew about that particular information. And the obligation is not on Holiday's counsel, it's on Holiday itself. They are the ones that, if they're going to be asserting these defenses, they need to be looking into them. And they need to be providing the documents that are required to support that. So simply because their counsel had decided on a particular strategy that, and then when it came time for the briefing to commence, she realized she might have one of the other defenses that she had previously provided might actually be a better defense. That doesn't get rid of their obligations, because if it did, then no defendant would essentially write the initial disclosures right out of the rule. Because all you have to do is have your attorney say, I thought I was going to use just this one defense, but now I looked at it more closely when I was sitting down to do the briefing, and I finally talked to you about this. And you know what? We have these other defenses. Turns out they're great. And if that's the case, why would anybody disclose anything? Because you can just rely on the fact that your attorney was only thinking about one or two of your positions, supposedly. With respect to the assertion that my client should have moved under rule 5060. Again, that's placing the burden to fix the failure of the disclosure on my client and not on holiday. And I don't think it's appropriate for the party that did no wrong to have to bear the burdens that come from that failure. It should be, if holiday has failed to disclose something and they want to use it, they need to take the steps necessary to mitigate those damages, not my client. And then with respect to the MHRA amendment process, the legislative history I believe shows that at one point in 2016, they had one of the versions of the bill did include the language specifically stating that it needed to be sent. That was removed before final passage. So, although I agree that it's plain on its face and we shouldn't be getting to the legislative history. If we are getting to the legislative history, it's very clear that they did not intend to include that phrase in the 2016 version of the bill. It was in there for one version, they took it out before final passage. That's part of what happens to get bills passed, there's give and take, and we have to deal with what's ultimately in the language. If there are no questions, thank you, your honors. Case is submitted, we'll take it under consideration. That completes this panel's work for the morning.